**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ X
                                                             :
THE LAW FUNDER, LLC, LEOPARD            :    Case No. 12-cv-07862 (LAK)
TRADING, LLC and GEORGE PRUSSIN,        :
                                        :
          Petitioners,                  :    ECF Case
                                        :
     vs.                                :
                                        :
AMER JNEID,                             :
                                        :
          Respondent.                   :
                                        :
------------------------------------------------------------ X


### MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S

### MOTION TO DISMISS PETITION OR, IN THE ALTERNATIVE, STAY ACTION


THE SALL LAW FIRM
A Professional Corporation
32351 Coast Highway
Laguna Beach, California 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403
Email: sburke@sall-lawoffice.com

*Attorneys for Respondent AMER JNEID*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................1

STATEMENT OF FACTS ....................................................................2

    A.  Facts Relating to Jurisdiction .......................................................2

    B.  Facts Relating to the California Lawsuits .....................................4

ARGUMENT .....................................................................................8

  I.   THE COURT LACKS PERSONAL JURISDICTION OVER
      RESPONDENT ...........................................................................8

    A.  Petitioners' Factual Allegations Do Not Meet the Burden of Establishing
        Personal Jurisdiction Over Jneid .............................................8

    B.  Petitioners Fail to Allege Sufficient Minimum Contacts By Jneid Under
        New York's Long-Arm and Federal Constitutional Standards ..................9

  II.  THE PETITION FAILS TO STATE A CLAIM FOR RELIEF ..................16

    A.  A Petition to Compel Certain Claims to Arbitration Under C.P.L.R.
        § 7503 Must Be Filed in the Action in Which the Claims Are Asserted...16

  III.  PETITIONERS HAVE FAILED TO JOIN A NECESSARY AND
       INDISPENSIBLE PARTY ..............................................................19

    A.  Petitioners Have Failed to Join Necessary Party Bill Suojanen – a Party
        Not Likely Subject to This Court's Jurisdiction .........................19

  IV.  SHOULD THE COURT FIND THAT DISMISSAL UNDER RULE 12(B)
       IS NOT WARRANTED, THE ACTION SHOULD BE DISMISSED OR
       STAYED ON ABSTENTION AND COMITY GROUNDS .........................20

CONCLUSION ...................................................................................27

# TABLE OF AUTHORITIES

**Federal Cases**

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,
   762 F.2d 205 (2d Cir. 1985)..............................................................22

*AXA Corporate Solutions v. Underwriters Reinsurance Corp.*,
   347 F.3d 272 (7th Cir. 2003) .............................................................21

*Beacon Enterprises, Inc. v. Menzies*,
   715 F.2d 757 (2d Cir. 1983)..............................................................12

*Bensusan Rest. Corp. v. King*,
   126 F.3d 25 (2d Cir. 1997).................................................................9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..........................14

*Chone v. Healthtronics, Inc.*, No. 06-CV-1287 (SJF),
   2007 WL 1836831 (E.D.N.Y. June 20, 2007) .......................................9

*Colorado River Conservation District v. United States*,
   424 U.S. 800 (1976).........................................................................20

*CutCo Indus., Inc. v. Naughton*,
   806 F.2d 361 (2d Cir. 1986) .............................................................11

*DiStefano v. Carozzi North Am., Inc.*,
   286 F.3d 81 (2d Cir. 2001).................................................................9

*F.D.I.C. v. Four Star Holding Co.*,
   178 F.3d 97 (2d Cir. 1999).................................................................21

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
   862 F.Supp.2d 170 (E.D.N.Y 2012) ..................................................21

*Girl Scouts of the United States v. Steir*,
   102 Fed. Appx. 2171 (2d Cir. 2004)..................................................10

*Guo Jin v. EBI Inc.*, No. 05-CV-4201 (NGG),
   2008 WL 896192 (E.D.N.Y. Mar. 31, 2008)........................................8

*International Customs Associates, Inc. v. Ford Motor Co.*,
   893 F. Supp. 1251 (S.D.N.Y. 1995) ..................................................12

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945).........................................................................14

*Jazini v. Nissan Motor Co.*,
   148 F.2d 181 (2d Cir. 1998) ...........................................................8, 9

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*,
   918 F.2d 1039 (2d Cir. 1990) .............................................................8

*Mayes v. Leipziger*,
 674 F.2d 178 (2d Cir. 1982) ............................................................................11

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir. 1996) ...............................................................................8

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
 460 U.S. 1 (1983) .............................................................................................21

*Navaera Sciences, LLC v. Acuity Forensic Inc.*,
 667 F. Supp. 2d 369 (S.D.N.Y. 2009) ........................................................ 12, 13

*Penguin Grp. (USA), Inc. v. Am. Buddha*,
 609 F.3d 30 (2d Cir. 2010)................................................................................8

*Sphere Drake Ins. v. P.B.L. Entertainment, Inc.*,
 30 F.3d 21 (2d Cir. 1994)................................................................................17

*Telesco v. Telesco Fuel and Mason's Materials, Inc.*,
 765 F.2d 356 (2d Cir. 1985)............................................................................23

*Viacom Intern., Inc. v. Kearney*,
 212 F.3d 721 (2d Cir. 2000)............................................................................19

*Whitaker v. Am. Telecasting, Inc.*,
 261 F.3d 196 (2d Cir. 2001)............................................................................14

**State Cases**
*Armendariz v. Foundation Health Psychcare Services, Inc.*,
 24 Cal. 4th 83 (2000) ......................................................................................15

*Bankers Commercial Corp. v. Alto, Inc.*,
 30 A.D.2d 517, 289 N.Y.S.2d 993 (1st Dep't 1968) .........................................13

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
 258 N.E.2d 202 (N.Y. 1970)............................................................................12

Hamilton & Co. v. American Home Assur. Co., 21 A.D.2d 500, 251 N.Y.S.2d
 215, [summarily] aff'd 15 N.Y.2d 595, 255 N.Y.S.2d 262, 203 N.E.2d 649 ......18

*Krepps v. Reiner*,
 588 F. Supp. 2d 471 (S.D.N.Y. 2008) ................................................................8

*Malta Town Center I, Ltd. v. Town of Malta Bd. of Assessment Review*,
 3 N.Y.3d 563 (2004) ........................................................................................18

*Mattgo Enterprises, Inc. v. Aaron*, 374 F. Supp. 20 (S.D.N.Y. 1974) ...................15

*McKee Electric Co. v. Rauland-Borg Corp.*,
 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967).................................13

*Mionis v. Bank Julies Baer & Co., Ltd.*,

749 N.Y.S.2d 497 (App. Div. 2002) .................................................17

*Presidential Realty Corp. v. Michael Square West, Ltd.,*
  44 N.Y.2d 672, 405 N.Y.S.2d 37, 376 N.E.2d 198, 199 (1978) ........................13

*PromoFone, Inc. v. PCC Management, Inc.*,
  637 N.Y.S.2d 405 (App. Div. 1996) ............................................ 17, 18

*Radioactive, J.V. v. Mason,*
  153 F. Supp. 2d 462 (S.D.N.Y. 2001) ........................................... 21, 22

*Success Mktg. Elecs., Inc. v. Titan Sec., Inc.*,
  612 N.Y.S.2d 451 (App. Div. 1994) ...............................................12

**Statutes**

Cal. Civ. Proc. Code § 1281.2 (West 2012) ...................................... 17, 23

N. Y. Civ. Prac. L. & R. § 302 (McKinney's 2012) ..................................... 10, 11

N.Y. Civ. Prac. L. & R. § 7503(a) (McKinney's 2012) ...........................16

**Rules**

Fed. R. Civ. P. 19(a).......................................................... 19, 20

## PRELIMINARY STATEMENT

This Petition concerns a very small part of a much larger picture that involves over a dozen parties that have been in related litigation in the California Superior Courts for over ten years.  Indeed, the very claims Petitioners seek by this Petition to compel to arbitration are currently pending in the California Superior Court.  Those claims, by California resident and domiciliary Amer Jneid, arise from two distinct groups of contracts between Jneid and Petitioners: (1) four alleged Contingent Proceeds Agreements executed in California and under which Petitioners Law Funder LLC and Leopard Trading LLC acquired a contingent interest in the proceeds of a California lawsuit entitled *Jneid, et al. v. Tripole Corporation, et al.* (referred to as the "Novell Litigation" in the Petition); and (2) alleged Promissory Notes executed by Jneid in California that mature upon the release of funds currently interpled in another California action, entitled *Sheldon, et al. v. Strong, et al.* ("Strong Litigation").

The Petition should be dismissed pursuant to Rule 12(b)(2), (6) and (7) because this Court does not have personal jurisdiction over Jneid.  Moreover, the Petition fails to state a claim because it seeks to compel arbitration under a governing New York statute that requires the petition to be filed in the case where the claims to be compelled to arbitration are asserted, in this case, in California, not in a new action filed in New York.  The Petition further fails to join necessary parties who executed the relevant contracts and whose rights will be impacted by any arbitration compelled here.  The Petition should accordingly be dismissed.

If for any reason this Court finds dismissal not warranted under Rule 12(b), the Court should nonetheless abstain from determining the issue of arbitrability in this action in deference to the earlier-filed California case in which the very same issue presented in the Petition here is before the California Superior Court for determination there.  This action should

accordingly be dismissed or stayed in the interests of comity and judicial economy.

## STATEMENT OF FACTS

### A.      Facts Relating to Jurisdiction

Respondent Amer Jneid is now and was at the time this action was filed a

California resident and domiciliary.  (Declaration of Amer Jneid dated October 29, 2012 filed

concurrently herewith ("Jneid Decl."), ¶ 3).  Jneid was one of three plaintiffs in a lawsuit filed in

the Superior Court of California entitled *Jneid, et al. v. Tripole Corporation, et al.*, Superior

Court the State of California, County of Orange, Case No. 02CC00182 filed on July 12, 2002

("Novell Litigation").  (Petition, p. 3).  As alleged in the Petition, in or about December 2005,

Jneid approached The Law Funder LLC ("Law Funder") to propose that Law Funder purchase a

contingent interest in his claim against Novell, Inc. in the Novell Litigation.  (Petition, p. 3).

Through a series of four agreements, called Sale of Contingent Proceeds Agreements ("CPAs"),

Petitioners Law Funder and Leopard Trading LLC ("Leopard Trading") acquired a contingent

interest in the claims for money damages asserted against Novell in the Novell Litigation by

Jneid.  (Petition, p.4 and Exs. A-D).  Each of the CPAs was negotiated by Jneid in California

over the telephone and by email with New Jersey resident Rory Donadio.  (Jneid Decl., ¶ 5).

Donadio was the principal of a brokerage known as Montclair Funding Group, Inc. ("MFG"), a

New Jersey business that negotiated the terms of CPAs for law funding companies such as Law

Funder and Leopard Trading in exchange for a commission.  (Jneid Decl., ¶¶ 5-6; Declaration of

Suzanne Burke ("Burke Decl."), ¶ 4 and Ex. A (Information, p. 2, ¶ 1(d)).  Thus, as alleged in the

Petition, Jneid initially approached Law Funder about purchasing an interest in the Novell

Litigation, but he apparently was referred to MFG, as all of the negotiations concerning the

CPAs were with Mr. Donadio.  Jneid did not have direct contact with Law Funder or Leopard

Trading in the negotiations of the agreements.  (Jneid Decl., ¶¶ 5-7).  All negotiations were

through Donadio.  Occasionally, Donadio would have Mathew Sheldon join on phone conversations.  At the time, Jneid believed Sheldon was the attorney for MFG.  (Jneid Decl., ¶ 6).

The CPAs were executed by Jneid in California under the blank signature line of Matthew Sheldon, for Law Funder and Leopard Trading.  (Jneid Decl., ¶ 9; Petition, Exs. A-D).  Neither Mr. Sheldon nor anyone else acting for Law Funder or Leopard Trading ever executed the CPAs.  (Jneid Decl., ¶ 9; Petition, Exs. A-D (unexecuted CPAs)).  Although the face value of the amounts advanced to Jneid under the CPAs is $1,092,500, only $950,000 was actually advanced to Jneid.  (Petition, Exs. A-D (CPAs, ¶ 2)).  The difference between the face and actual amounts received includes a total of $134,500 in commissions paid to MFG as an "Origination Fee."  (Petition, Exs. A-D (CPAs, ¶ 2(b)).  Jneid has recently discovered that these commission payments to MFG were part of an illegal kick-back scam that has resulted in two criminal cases being filed in the United States District Court, District of New Jersey, against Rory Donadio and Matthew Sheldon.  (Burke Decl., ¶¶ 5-6 and Exs. A and B (Information and Indictment against Donadio and Sheldon, respectively)).  By this Petition, Law Funder and Leopard Trading seek to enforce against Jneid the illegal terms of the CPAs.

Separate from the CPAs, Petitioner George Prussin agreed to loan money to Jneid under the terms of straight promissory notes.  (Petition, pp. 4-5 and Exs. E and F).  These promissory notes were negotiated by Jneid by telephone and email from California with New Jersey resident George Prussin.  (Jneid Decl., ¶¶ 11, 13-14).  A third note was executed by Jneid in California in favor of Law Funder.  (Petition, Ex. G).  That Note was likewise negotiated exclusively by Jneid primarily in California with New Jersey resident Prussin.  (Jneid Decl., ¶ 13).  The Law Funder promissory note and second Prussin promissory note are collectively

referred to as the "Notes."[1]   The Notes are due and payable by their terms within seven days of receipt by Jneid and/or his attorneys "of any and/or all of the amounts set forth in the order of the Superior Court of Orange County California dated October 1, 2010 in [the Novell Litigation]." (Petition, Exs. F and G).

<strong>B.      Facts Relating to the California Lawsuits</strong>

<strong>1.      <em>The Novell Litigation</em></strong>

As stated in the Notes, on October 1, 2010, "[t]he trial Court [in the Novell Litigation] ordered Novell to pay $450,945 plus $302,308.31" ("Sanctions Funds").  That order was appealed by Novell.  (Petition, Exs. F and G (Notes)).  The amount set forth in the order referred to in the Notes was an award of discovery sanctions against Novell in the Novell Litigation.  (Burke Decl., Ex. C (10/1/10 Order)).  The sanction was ordered by the California Court of Appeal when the original judgment in favor of Jneid against Novell was overturned on appeal and the case remanded for retrial.  As a sanction for the discovery abuses by Novell that gave rise to the remand, the Court of Appeal ordered Novell to pay the costs and expenses incurred by Jneid in connection with the first trial.  (Burke Decl., Ex. D (Appellate Decision)).

During the second trial, Jneid alleges that his claims against Novell were dismissed in late February 2012 in exchange for a mutual walk away.  (Petition, Ex. I (Jneid's First Amended Complaint ("FAC"), pp. 5-6. ¶ 20)).  Law Funder and Leopard Trading contend that, notwithstanding this mutual walk away settlement, certain amounts due to Jneid ("Tripole Payment Funds") from Tripole Corporation ("Tripole") pursuant to a long-standing contract between Tripole and Jneid are subject to the CPAs and owned by Petitioners.  (Petition, Ex. I

---

[1]      Two Promissory Notes were executed in favor of George Prussin.  The second Note superseded and subsumed the first, although Prussin now falsely claims in the Petition that each Note remains due and payable and that a total of $183,750 was advanced to Jneid.  (Petition, p. 5).  In fact, only $130,000 was advanced to Jneid under the Notes: $50,000 in connection with the first Prussin Note, $30,000 in connection with the second Prussin Note, and $50,000 in connection with the Law Funder Note.  (Jneid Decl., ¶ 12).

(FAC, ¶¶ 21-22)).  Jneid disputes this contention.

## 2.  *The Strong Litigation*

Before the Sanctions Funds were paid, on November 23, 2010, Jneid's counsel filed a declaratory relief action to clear the liens against the Sanctions Funds asserted by two of Jneid's two former counsel, Kathy Strong and Wendy Reed, and two judgment creditors.[2] (Burke Decl., Ex. E (Strong Litigation Docket)).  That action is the Strong Litigation, entitled *Sheldon, et al. v. Strong, et al.*, Superior Court of the State of California, County of Orange, Case No. 30-2010-00427473.  Upon motion of Reed and Strong, and over Jneid's objection, the Sanctions Fund were interpled into the Court in the Strong Litigation.  The California Superior Court currently has the funds and the Strong Litigation remains pending.  (Burke Decl., ¶ 9). The case was recently designated "complex" and transferred to the complex panel.  (Burke Decl., Ex. E (Docket Items 873-74).  Following is a list of the current parties to the Strong Litigation and their status in the case:

Amer Jneid – Plaintiff and Cross-Defendant*

Bill Suojanen – Plaintiff and Cross-Defendant (Jneid's former counsel)*

Ali Beydoun – Plaintiff (also a co-Plaintiff with Jneid in the Novell Litigation)*

Craig Sheldon – Plaintiff (also a co-Plaintiff with Jneid in the Novell Litigation)

Kathleen Strong – Defendant and Cross-Complainant (Jneid's former counsel)*

Wendy Reed – Defendant and Cross-Complainant (Jneid's former counsel)*

Tom Pistone – Cross-Defendant (Jneid's former trial counsel)

Anthony Trepel – Cross-Defendant (Jneid's former trial counsel)

American Geotechnical, Inc. – Cross-Defendant (Judgment Creditor of Suojanen)*

---

[2]    The judgment creditors have since released their liens and have been dismissed by Jneid.

> Accuride International, Inc. – Cross-Defendant (former Judgment Creditor of
>
> Jneid)
>
> Veritext Reporting Co. – Cross-Defendant (Judgment Creditor of Suojanen)*
>
> Emanagelaw, Inc. – Cross-Defendant (alleged to have violated Strong's lien)
>
> Novell, Inc. – Cross-Defendant (alleged to have violated Strong's lien)

(Burke Decl., ¶ 10 and Ex. E).  Each of the listed parties followed by an asterisk claims an

interest in the Sanctions Funds that are also the subject of the Notes alleged in the Petition.

(Petition, Exs. F and G).  As the 51-page docket reflects, the Strong Litigation has been heavily

litigated and is currently set for trial on May 6, 2013.  (Burke Decl., ¶ 11 and Ex. E).  Most

recently, Strong and Reed have filed a motion for preliminary injunction seeking to compel the

deposit into Court of the portion of the Tripole Payment Funds in which they claim an interest.

(Burke Decl., ¶ 11 and Ex. F (Item 839)).  That Motion has not yet been heard.  (Burke Decl.,

¶ 11).  These are the same funds that Law Funder and Leopard Trading contend in their Petition

that they own and the same funds at issue in the claims Petitioners seek to compel to arbitration

by this Petition.

### 3.        *The California Law Funder Action*

Under the non-recourse terms of the CPAs, in the event that Jneid does not

recover on his claims for money damages in the Novell Litigation, nothing is owed under the

agreements.  (Petition, p. 2).  The CPAs further provide that if a recovery is obtained, that "The

amount due shall be paid immediately after attorney fees (including the expenses charged by the

Seller(s) attorney for costs) and after payment to any recorded lien holders that might exist prior

to the date hereof, or which may have priority by law."  (Petition, Exs. A-D (CPAs, ¶ 13)).  Jneid

did not recover on any of his claims for money damages asserted in the Novell Litigation.  Jneid

accordingly contends that he does not owe Law Funder or Leopard Trading anything under the CPAs. (Petition, Ex. I (FAC, ¶ 20)). Law Funder and Leopard Trading contend that it owns the Tripole Payment Funds and have repeatedly demanded immediate payment of the amounts it contends it is owed, ahead of all other creditors. (Petition, Ex. I (FAC, ¶ 21-22)). All of the parties listed above that claim an interest in the Sanctions Funds also claim an interest in the Tripole Payment Funds ahead of Petitioners' interest.

As for the Notes, they are not due and payable until the Sanctions Funds are received by Jneid or his attorneys, which has not yet occurred because the funds have been interpled in the Strong Litigation, which remains pending. Although not yet due, Law Funder and Prussin have repeatedly demanded immediate payment of the Notes from Jneid. (Petition, Ex. I (FAC, ¶ 27). Moreover, the stated interest rate on the Notes is 18% (Petition, Exs. E-G), which Jneid contends is a usurious rate of interest. (Petition, Ex. I (FAC, ¶¶ 31, 40)).

Accordingly, on May 29, 2012, Jneid filed in the Superior Court of the State of California, County of Orange, Case No. 30-2012-00572486 ("California Law Funder Action"), a complaint seeking a declaration of the parties' rights under the CPAs and Notes. The complaint was thereafter amended and alleges claims against Petitioners for (1) Declaratory Relief – Promissory Note; (2) Declaratory Relief – Sale of Contingent Proceeds Agreements; (3) Declaratory Relief – Promissory Note; (4) Violation of the Racketeering Influenced and Corruption Organization Act ("RICO") [18 U.S.C. § 1961 *et seq.*]; (5) Conspiracy to Violate RICO; and (6) Unfair Competition [Cal. Bus. & Prof. Code §§ 17200, *et seq.*]. (Petition, Ex. I (FAC)).

Each of the defendants was served with process in the California Law Funder Action. (Burke Decl., ¶ 12). Two days before their response to the FAC was due in the

California Law Funder Action, Petitioners filed this Petition in the New York Supreme Court

seeking an order to show cause and Temporary Restraining Order to freeze the Tripole Payment

Funds and stay the California Law Funder Action.  (Burke Decl., ¶ 13).  The TRO was denied,

but an Order to Show Cause re arbitration set for October 29, 2012.  (Burke Decl., ¶ 14 and

Ex. F).  The action was removed to this Court on October 22, 2012, as a result of which the New

York Court denied the OSC as moot.  (Burke Decl., ¶ 15 and Ex. G).

**ARGUMENT**

I.   **THE COURT LACKS PERSONAL JURISDICTION OVER RESPONDENT**

A.   **Petitioners' Factual Allegations Do Not Meet the Burden of Establishing Personal Jurisdiction Over Jneid**

The plaintiff bears the burden of proving the existence of jurisdiction over the

defendants in a lawsuit.  *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d

Cir. 1996); *Penguin Grp. (USA), Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  Once

challenged, the plaintiff must prove by a preponderance of the evidence the facts necessary to

establish personal jurisdiction over the defendant.  *Landoil Res. Corp. v. Alexander & Alexander*

*Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).  To defeat a motion to dismiss for lack of

personal jurisdiction, legally sufficient allegations of jurisdiction must be pled.  *See Guo Jin*

*v. EBI Inc.*, No. 05-CV-4201 (NGG), 2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008).  It is not

enough to merely allege legal conclusions.  *See Jazini v. Nissan Motor Co.*, 148 F.2d 181, 184-85

(2d Cir. 1998).  Rather, a prima facie showing of personal jurisdiction requires specific "averments

of fact that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction."

*Krepps v. Reiner*, 588 F. Supp. 2d 471, 478-9 (S.D.N.Y. 2008).  Conclusory allegations of

jurisdiction are insufficient to establish that the Court has personal jurisdiction over defendants.

*Guo Jin*, 2008 WL 896192, at *2; *Chone v. Healthtronics, Inc.,* No. 06-CV-1287 (SJF), 2007

8

WL 1836831, at *5 (E.D.N.Y. June 20, 2007).

With respect to jurisdiction, Petitioners here allege only that the New York court has jurisdiction over Amer Jneid, a resident of the State of California (Petition, p. 2, ¶ 6), "as he has availed himself of this State in negotiating and ultimately selling his interest in the proceeds of the Novell Litigation to Law Funder which, for all relevant times herein was located in New York, New York." (Petition, p. 2, ¶ 7). No other allegations of jurisdiction are alleged. There are no factual allegations to support the conclusion that Jneid "negotiated" anything in New York or how selling an intangible interest in a California lawsuit could constitute purposeful availment. There are no allegations concerning where Amer Jneid was when he allegedly negotiated the contracts at issue, the manner in which the contracts were negotiated, where Amer Jneid was when he signed them, or where the contracts were to be performed – which are among the facts relevant to determining whether New York would have jurisdiction over this matter.[3] Petitioners' bare conclusory allegations are legally insufficient to provide a jurisdictional basis for haling Amer Jneid into New York for litigation. *See Jazini,* 148 F.3d at 184-85 .

**B.     Petitioners Fail to Allege Sufficient Minimum Contacts By Jneid
Under New York's Long-Arm and Federal Constitutional Standards**

In a diversity case, "personal jurisdiction is determined by the law of the state in which the district court sits." *DiStefano v. Carozzi North Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). In New York, the Court must first look to the state's long-arm statute and, "[i]f the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King,* 126 F.3d 25, 27 (2d Cir. 1997). Thus, even if a plaintiff can satisfy the requirements of the New York long arm statute, it must still demonstrate that "the exercise of personal jurisdiction in this case would

---

[3]     In fact, the State in which each of those acts occurred in California or while Jneid was overseas, as discussed below.

9

comport with federal due process standards." *Girl Scouts of the United States v. Steir*, 102 Fed.

Appx. 217, 221 (2d Cir. 2004).

Petitioners here cannot satisfy either New York's long-arm statute or the

constitutional principles of fair play and substantial justice. This action should accordingly be

dismissed pursuant to Rule 12(b)(2).

### 1.   *Jneid's Alleged Activities Cannot Satisfy the Requirements of New York's Long-Arm Statute.*

There are two types of long arm statutes. The first directs the court to exercise

jurisdiction on any basis not inconsistent with the constitution of either that state or of the United

States. The second is known as an "enumerated act" statute. These statutes, by contrast, direct the

court to exercise jurisdiction over any defendant who commits one of several enumerated acts in

the forum state. New York's long-arm statute (N. Y. Civ. Prac. L. & R. § 302) is an

enumerated act statute. [4]  That statute states in relevant part:

> (a) Acts which are the basis of jurisdiction. As to a cause of
> action arising from any of the acts enumerated in this section, a
> court may exercise personal jurisdiction over any
> nondomiciliary, or his executor or administrator, who in person
> or through an agent:
> 1. transacts any business within the state or contracts
> anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause
> of action for defamation of character arising from the act; or

---

[4]      A New York Court may also exercise jurisdiction over a non-resident defendant under
Civ. Prac. L. & R. § 301, which provides for jurisdiction based on the pre-statute common law
grounds of "presence, consent, domicile, and 'doing business.'"  *See Shakour v. Federal
Republic of Germany*, 199 F. Supp. 2d 8, 15 (E.D.N.Y. 2002). Petitioners do not allege that
jurisdiction exists on any of these grounds and, in any event, Jneid was not served in New York,
owns no property there, has not lived there, and at all relevant times been domiciled in
California. (Jneid Decl. ¶ 3-4). Moreover, Petitioners have not alleged that Jneid was 'doing
business' in New York, and there is no basis for such a allegation, as Jneid has no "continuous or
systematic course of 'doing business' ... as to warrant a finding of [his] 'presence'" in the state.
*See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir. 1990); *Laufer v.
Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982) (holding that defendant's activities must establish a
presence "not occasionally or casually, but with a fair measure of permanence and continuity")
(citations omitted).

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . .

N.Y. Civ. Prac. L. & R. § 302(a)(1)-(3) (McKinney's 2012). In enacting § 302, it is generally recognized that the New York State Legislature did not seek to exercise all of the jurisdictional power constitutionally available under the Supreme Court's due process jurisprudence. *Mayes v. Leipziger*, 674 F.2d 178, 183 (2d Cir. 1982). A nondomiciliary transacts business in New York under New York's long-arm statute, only when he purposefully avails himself of the privilege of conducting activities within New York and thus invokes the benefits and protections of its laws. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).

Petitioners here base their allegation of jurisdiction on an alleged "purposeful availment" by Jneid "in negotiating and ultimately selling his interest in the proceeds of the [Novell Action] to Law Funder which, for all relevant times herein was located in New York, New York." (Petition, p. 2). This bare allegation is insufficient to support this court's exercise of personal jurisdiction over Jneid.

New York courts have made clear that merely entering into a contract with a New York corporation is not sufficient to constitute the transaction of business under § 301(a)(1) of the CPLR.[5] *See Success Mktg. Elecs., Inc. v. Titan Sec., Inc.*, 612 N.Y.S.2d 451 (App. Div.

---

[5]     Respondent questions whether Petitioners Law Funder or Leopard Trading in fact really were located in New York, New York. Respondent's efforts to serve Law Funder and Leopard Trading at their alleged New York, New York address revealed that they do not, in fact, have an office there. Moreover, the address for Law Funder given in the most recent February 2, 2012 Promissory Note, lists a Hackensack, New Jersey address. (Petition, Ex. G). In any event, the

1994); *Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 258 N.E.2d 202, 205 (N.Y. 1970) ("The mere receipt by a nonresident of benefit or profit from a contract performed by others in New York is clearly not an act by the recipient in this State sufficient to confer jurisdiction under our long-arm statute.").  Moreover, personal jurisdiction will not be sustained under CPLR § 302(a)(1) solely on the basis of a defendant's communication, by telephone or letter, from outside New York into the jurisdiction.  *See Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983). The mere fact that Jneid has "entered into a contract with a company [allegedly] headquartered in New York" does not establish personal jurisdiction unless Jneid "project[ed himself] into the New York market."  *Navaera Sciences, LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009).  In determining whether personal jurisdiction exists, "[t]he appropriate focus . . . is on what the non-domiciliary defendant did in New York and not on what the plaintiffs did." *See International Customs Associates, Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995).

        All of Jneid's negotiations over the CPAs took place with MFG, which is a New Jersey company.  (Jneid Decl., ¶ 5; Burke Decl., Ex. A).  Jneid did not travel to New York during this time period to conduct business.  (Jneid Decl., ¶¶ 7, 13).  All of the negotiations took place by telephone or email and occurred while Jneid was in California or overseas.  (Jneid Decl., ¶ 7). He never personally met anyone from Leopard Trading, Law Funder, or MFG.  (Jneid Decl., ¶ 7).  The CPAs were executed in California.  (Jneid Decl., ¶ 9).  Similarly, the Notes were executed by Jneid in California and were negotiated by him by email or telephone while he was in California or overseas.  (Jneid Decl., ¶¶ 13, 15).  All of the negotiations concerning the Notes were with New Jersey resident Prussin and called for payment in New Jersey.  (Jneid Decl.,

---

CPAs were negotiated with MFG, a New Jersey company, not Law Funder or Leopard Trading directly.

¶¶ 13-14).  In addition, the CPAs concern the purchase of an interest in a California lawsuit.  The Notes are payable when the Sanctions Funds awarded by the California court in the Novell Litigation and interpled into the California court in the Strong Litigation are released.  The subject matter of these contracts has no connection whatsoever to New York.  The subject of the contracts, coupled with the fact that all of Jneid's actions with regard to the agreements took place outside of New York, make clear that Jneid did not project himself into the State of New York.

Indeed, even where the defendant had contacts with New York more significant than those alleged by Petitioners here, New York Courts have not found personal jurisdiction under its long-arm statute.  *See, e.g., Presidential Realty Corp. v. Michael Square West, Ltd.,* 44 N.Y.2d 672, 673–74, 405 N.Y.S.2d 37, 38, 376 N.E.2d 198, 199 (1978) (in action on contract, defendant's agent signed modification agreement in New York); *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 37–38, 229 N.E.2d 604, 607 (1967) (in action on contract, defendant's agent met with plaintiff in New York to discuss contract compliance); *Bankers Commercial Corp. v. Alto, Inc.,* 30 A.D.2d 517, 289 N.Y.S.2d 993, 994 (1st Dep't 1968) (defendant conducted settlement discussions with plaintiffs in New York).

Although some of the contracts, specifically, the CPAs, do have a New York choice of law provision, such provisions alone are "insufficient to confer personal jurisdiction over a non-domiciliary."  *See, e.g., Navaera Sciences, LLC v. Acuity Forensic Inc.,* 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009).  Moreover, there are no such choice of law provisions in the Notes and no general forum selection clauses in all of the contracts requiring that suit be brought in New York.

Accordingly, Jneid is not subject to jurisdiction under New York's long-arm

statute.  Without a finding of jurisdiction under that statute, the inquiry into personal jurisdiction

should end.  *See Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208-09 (2d Cir. 2001)

(constitutional due process argument not reached where jurisdiction under long-arm statute not

established).

> **2.      *Even if New York's Long-Arm Statute Was Satisfied Here, This
> Court's Exercise of Jurisdiction Would Not Comport With
> Traditional Notions of "Fair Play and Substantial Justice."***

Even if New York's long-arm statute is otherwise satisfied, it is a constitutional

principle that for a court to assert jurisdiction over a foreign defendant, it respect notions of fair

play and substantial justice by finding minimum contacts with the forum state.  *International*

*Shoe Co. v. Washington*, 326 U.S. 310 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

477-78 (1985).   Subjecting Jneid to jurisdiction in New York would not comport with fair play

and substantial justice.  In evaluating the constitutional requirements of due process, courts

consider the "burden on the defendant, the forum State's interest in adjudicating the dispute, the

plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and the shared interest of the

several States in furthering fundamental substantive social policies."  *Burger King*, 471 U.S. at

476-77.  Because the burden on Jneid and the interest in efficient resolution of controversies

outweigh New York's interest in promoting arbitration, the exercise of jurisdiction over Jneid

would be unfair.

Requiring Jneid to litigate the arbitrability of his claims in New York is

unnecessarily burdensome.  Jneid is already litigating in two cases in California on related issues,

including one action where the Petitioners are parties.  (Burke Decl., ¶¶ 9-11; Petition, Ex. I

(FAC)).  Indeed, Petitioners have filed a motion in the California Law Funder Action that will

require the determination of whether Jneid's claims are arbitrable because Petitioners seek to

dismiss the California Law Funder Action on the grounds that the claims asserted are arbitrable. (Burke Decl., ¶ 16 and Ex. H (Motion to Dismiss, pp. 5:1-6:7)).

Neither Jneid's nor Petitioners' interests in obtaining convenient and effective relief are being served by this action which is duplicative of the California Law Funder Action. It would have been more convenient and effective to have simply brought a motion to compel arbitration in California than to have to litigate arbitrability twice.  This court and the California court have been asked by the Petitioners to rule on the same issue, which is a waste of both the courts' and the parties' time and resources.

New York's interest in promoting arbitration does not outweigh these concerns. California shares this interest in enforcing arbitration agreements.  *See Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83, 97 (2000) ("California law . . . favors enforcement of valid arbitration agreements.").  Because the states have a shared interest in advancing their shared public policy, New York's special interest in this case is not particularly strong.

For these reasons, especially in light of the attenuated contacts between Jneid and New York, this court should dismiss for want of personal jurisdiction over Jneid.

**3.**     <u>***Even if Jurisdiction Can Be Found as to the CPAs, There is no Jurisdiction as to the Notes.***</u>

Even if this court determines it has jurisdiction over Jneid as to the CPAs, there is no jurisdiction as to the Notes because Jneid did not transact business in New York with regard to the Notes and because any claims with regard to the Notes do not arise under the CPAs.  *See Mattgo Enterprises, Inc. v. Aaron*, 374 F. Supp. 20, 23 (S.D.N.Y. 1974).

As Petitioners acknowledge, the Notes are "distinguishable" from the CPAs. (Petition, at 4).  The Notes were negotiated entirely with Prussin, a citizen of New Jersey, while

Jneid was in California or overseas.  (Jneid Decl., ¶¶ 13-14).  They were executed in California.  (Jneid Decl., ¶ 15).  The Prussin Note is payable to Prussin at an address in New Jersey.  (Petition, Exs. E and F).  Likewise, the Law Funder Note is payable to a Law Funder address in New Jersey.  (Petition, Ex. G).  Thus, all payments under the Notes are directed to New Jersey, not New York.  There are no forum selection or choice of law clauses in the Notes.  Given the lack of any contacts with New York, there is no basis for personal jurisdiction over Jneid as to the Notes.

Likewise, jurisdiction with regard to the Notes does not arise from the CPAs.  The act giving rise to jurisdiction "must be related to the contract in suit, and not to earlier contracts."  *Mattgo Enterprises*, 374 F. Supp. at 23.  In this case, the promissory notes were distinct transactions from the contingent proceeds agreements.  The Notes were negotiated between different parties, were payable from different sources, and are payable on different terms.  There is no act related t o the Notes that supports jurisdiction in New York over Jneid with respect to the Notes.

## II.     THE PETITION FAILS TO STATE A CLAIM FOR RELIEF

### A.     A Petition to Compel Certain Claims to Arbitration Under C.P.L.R. § 7503 Must Be Filed in the Action in Which the Claims Are Asserted

Petitioners fail to state a claim because the New York arbitration statute under which the Petition is brought requires that a petition to compel arbitration be filed in the action in which the claims the petitioner seeks to compel to arbitration have been asserted.  *See* N.Y. Civ. Prac. L. & R. § 7503(a) (McKinney's 2012) ("If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application ***shall*** be made by motion ***in that action***.")  (emphasis added).  The California court in which Jneid's claims are currently pending has jurisdiction to hear a motion to compel

arbitration.  *See* Cal. Civ. Proc. Code § 1281.2 (West 2012) ("On petition of a party to an

arbitration agreement ... the court shall order the petitioner and respondent to arbitrate the

controversy if it determines than an agreement to arbitrate the controversy exists ... .").  Under

the plain language of § 7503(a), Petitioners were required to bring their motion to compel

arbitration in the California court.

        Although the intermediate appellate courts in New York have affirmed trial court

orders compelling arbitration even where an out-of-state proceeding has already commenced,

*e.g., PromoFone, Inc. v. PCC Management, Inc.*, 637 N.Y.S.2d 405, 406 (App. Div. 1996)

implied *overruling on other grounds recognized by Mionis v. Bank Julies Baer & Co., Ltd.,*  749

N.Y.S.2d 497, 503 (App. Div. 2002), the question of whether the statute authorizes such orders

has not been specifically addressed by any court.  There is no Court of Appeals decision squarely

on point[6] and the only Appellate Division case[7] addressing the question is likely wrongly

decided, and, in any event, is only persuasive.  *See Sphere Drake Ins. v. P.B.L. Entertainment,*

*Inc.*, 30 F.3d 21, 22–23 (2d Cir. 1994), *vacated on other grounds*, 52 F.3d 22 (2d Cir. 1995)

(noting that in the absence of a Court of Appeals decision, the holdings of the Appellate Division

are persuasive).

        *PromoFone* is the only case to rule on whether New York was the proper forum

---

[6]     The Court of Appeals has addressed only the question of whether a stay under § 3705, not an order compelling arbitration, is appropriate.  *See City Trade and Industries, Ltd. v. New Central Jute Mills Co.*, 25 N.Y.2d 49 (1969) (holding that the Appellate Division court did not abuse its discretion in reversing the stay of an out-of-state court action on comity grounds); *Hamilton & Co. v. American Home Assur. Co.*, 15 N.Y.2d 595(1964) (summarily affirming Appellate Division's decision affirming stay of out-of-state action).

[7]     The other Appellate Division cases likewise only address the power to stay an out-of-court proceeding, not to compel arbitration of an out-of-state proceeding.  *See Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*, 762 N.Y.S.2d 607 (App. Div. 2003); *In re Tarpon Cove, Ltd.*, 482 N.Y.S.2d 1 (App. Div. 1984); *Hamilton & Co. v. American Home Assur. Co.*, 251 N.Y.S.2d 215 (App. Div. 1964), *summarily aff'd* 15 N.Y.2d 595; *see also Necchi Sewing Mach. Sales Corp. v. Carl*, 260 F. Supp. 665, 669-70 (S.D.N.Y. 1966).

in which to compel arbitration when the arbitrable claims were already pending in another state. In *PromoFone*, the court affirmed an order compelling arbitration and staying the prosecution of a case in California.  The analysis is cursory and does not address the language of the statute-- this is the entire discussion of the issue:

> We agree with the IAS court that the motion to compel arbitration was brought in the proper forum and that CPLR 7503(a) did not require dismissal of the New York special proceeding seeking to stay the California action and to compel arbitration in this State.  The New York court had jurisdiction to enjoin appellant PCC from pursuing the out-of-state litigation in contravention of the agreement to arbitrate all disputes in New York and the strong public policy of this State favoring arbitration (*Hamilton & Co. v. American Home Assur. Co.*, 21 A.D.2d 500, 502, 251 N.Y.S.2d 215, [summarily] *aff'd* 15 N.Y.2d 595, 255 N.Y.S.2d 262, 203 N.E.2d 649).

*PromoFone*, 224 N.Y.S.2d at 406.

The case on which the *PromoFone* court relied, *Hamilton & Co.*, addressed only the power of the court to stay an out-of-state proceeding.  *See Hamilton & Co.*, 251 N.Y.S.2d at 217-218.[8]  Because *Hamilton & Co.* did not analyze the propriety of the petition to compel arbitration under § 7503, the *PromoFone* court's bare citation of the case does not support its conclusion that the New York was the proper forum to hear the petition.  Likewise, because *PromoFone* court conducted no independent analysis of § 7503, its conclusion is not entitled to deference from this court.  Instead, the court should rely on the plain language of the statute, which requires that Petitioners move to compel arbitration in the California court instead.  *See Malta Town Center I, Ltd. v. Town of Malta Bd. of Assessment Review*, 3 N.Y.3d 563, 568 (2004) (considering the "plain language of the statute[] as the best evidence of legislative

---

[8]      As a further matter, *Hamilton & Co.* was likely wrongly decided.  Its analysis is based on *In re: Wolff Co.*, 9 N.Y.2d 356 (1961), which (1) did not involve an out-of-state court action and (2) was decided under the predecessor statute to § 7503, N.Y. Civ. Prac. Act § 1451.  *See Wolff Co.*, 9 N.Y.2d at 361-62.  In particular, § 1451 authorized stays granted by the New York Supreme Court.  *Id.*  This language has been removed in § 7503, which authorizes petitions to compel only in the court where the claims are now preceding, if such court have jurisdiction. The *Hamilton & Co.* court does not consider this except to say that the adoption of the C.P.L.R. did not "limit the doctrine" of *Wolff*, a conclusion that ignores the plain language of the statute. *See Hamilton & Co.*, 251 N.Y.S.2d at 217.

intent.").

### III.   PETITIONERS HAVE FAILED TO JOIN A NECESSARY AND INDISPENSIBLE PARTY

#### A.   Petitioners Have Failed to Join Necessary Party Bill Suojanen – a Party Not Likely Subject to This Court's Jurisdiction

Petitioners have failed to join a necessary party, Bill Soujanen.  Under Rule 19(a) the court should order his joinder.[9]  Rule 19(a) requires the joinder of a person if (1) the person "claims an interest" such that failure to join will "impair or impede the person's ability to protect the interest" or (2) that person's absence would expose an existing party to "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. Proc. 19(a); *see also Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).  Because Soujanen's absence will inhibit Soujanen's interest in priority payment vis-a-vis Law Funder and Prussin, and because Soujanen's absence risks the imposition of inconsistent payment obligations on Jneid, Soujanen is a necessary party who must be joined if feasible.

In the California Law Funder Action, Jneid seeks declaratory relief as to a number of issues, including that the Notes, when due, must be paid from the first monies received by Soujanen or Jneid from the Sanctions Award.  (Petition, Ex. I (FAC, ¶¶ 29, 38)).  The resolution of these claims necessarily implicates Soujanen's interest in the Sanctions Funds, and, indeed, Soujanen has asserted a claim as to the entire Sanctions Funds in a different action, the Strong Litigation, now ongoing in California.  (Burke Decl., ¶ 9).

If this court grants the petition to compel arbitration and stays the California Law

---

[9]   Although Soujanen is a necessary party, joinder may not be feasible because it is not apparent that Soujanen is subject to personal jurisdiction in New York.  *See Allen ex rel. Allen v. Devine*, 670 F. Supp. 2d 164, 170 (E.D.N.Y. 2009).  As argued, *supra*, the Notes were negotiated in New Jersey and California between New Jersey and California citizens, executed in California, and are payable when monies obtained during litigation in California and that are the subject of separate ongoing litigation in California are released.  In the event this court concludes joinder is not feasible, Soujanen is an indispensable party such that this litigation should be dismissed.  *See* Rule 19(b).

Funder Action, Jneid's claims for declaratory relief will be decided in an arbitration in which Soujanen will not participate.  He will thus be unable to protect his asserted interest in the Sanctions Funds or to defend the request that the Notes be paid from any money he receives from the Sanctions Funds.  Neither Jneid nor Petitioners is likely to argue for the priority of Soujanen's claims, therefore Soujanen's interests will go entirely unrepresented in any arbitration ordered by this court.

Likewise, if this court grants the petition to compel arbitration and does not stay the California Law Funder Action as to Soujanen, or if the California action resumes against Soujanen after arbitration, Jneid faces a substantial risk of incurring inconsistent obligations. Because Soujanen's interest in the Sanctions Award may be decided without his participation and because Jneid may be caught between inconsistent legal obligations if Soujanen is not a party to any compelled arbitration, Soujanen is a necessary party.  His joinder should accordingly be ordered  pursuant to Rule 19(a).

## IV.    SHOULD THE COURT FIND THAT DISMISSAL UNDER RULE 12(B) IS NOT WARRANTED, THE ACTION SHOULD BE DISMISSED OR STAYED ON ABSTENTION AND COMITY GROUNDS

Because there is a pending, parallel, earlier-filed California action in which the issue of the arbitrability of Jneid's claims has been raised, this court should dismiss this action, or in the alternative, stay it pending resolution of the California Law Funder Action under *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976).  When there are parallel state and federal actions, abstention may be appropriate in the interests of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  *Id.* at 817.  In determining whether to abstain, courts consider (1) whether jurisdiction as been assumed over a *res*, (2) the "inconvenience of the forum," (3) the "avoidance of piecemeal litigation," (4) the "order in which the actions were filed," (5) the law

"provid[ing] the rule of decision," and (6) the protection of the plaintiff's rights. *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97, 101 (2d Cir. 1999). An additional relevant factor is whether the federal action was filed "vexatious[ly] or reactive[ly]." *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 17 n.20 (1983) (approving of the circuit court's use of this factor); *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (applying this factor). All of these factors here support abstention such that the Court should dismiss this federal action in favor of the earlier-filed California Law Funder Action in which the issue of arbitrability of the claims asserted in that action is already set to be decided. *See Radioactive, J.V. v. Mason*, 153 F. Supp. 2d 462, 474, 476-77 (S.D.N.Y. 2001) (dismissing case where four factors favored abstention, one was neutral, and one was only slightly against).

As to the *first* factor, while no court has yet assumed jurisdiction over the primary *res* at issue in this case (the Tripole Payment Funds), there is currently pending a Motion in the Strong Litigation seeking an order requiring that those funds be deposited into the California Court. (Burke Decl., ¶ 11 and Ex. I). Petitioners received notice of this motion and have not opposed it. (Burke Decl., ¶ 11). In the event the funds are deposited with the California court, this factor will weigh in favor of abstention. If not, then this factor would be neutral. *See Radioactive, J.V.*, 153 F. Supp. 2d at 474. As to the Sanctions Funds from which the Notes will be paid, this factor weighs in favor of abstention. The Sanctions Funds have been interpled into the California court and the Strong Litigation with respect to those funds has been pending for more than two years. (Burke Decl., ¶ 9 and Ex. E).

As to the s*econd* factor, this forum is inconvenient to all parties. *See First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F.Supp.2d 170, 187 (E.D.N.Y 2012) ("Inconvenience ... refers to the geographical location of the respective

courthouses.").  Jneid has recently learned, since the filing of his FAC in the California Law

Funder Action, that the CPAs may be illegal contracts and that the person with whom Jneid

negotiated the CPAs are facing criminal charges arising out of illegal kick backs from the

CPAs.[10]  (Burke Decl., Exs. A and B).  Thus, the legality of the CPAs must be decided before any

Court can decide whether Jneid's claims can be compelled to arbitration under those agreements.

If both this action and the California Law Funder Action proceed, there will necessarily be an

overlap in discovery between these two actions on these issues.  If both actions continue, the

parties and witnesses will be required to fly back-and-forth between California and New York

for such discovery to occur.  Where the California Law Funder Action was filed first, this weighs

in favor of the California action.  *See Radioactive, J.V.*, 153 F.Supp.2d at 476 ("Because all

parties ... are already litigating the issues underlying this dispute in California, the New York

forum is clearly inconvenient for all involved.").  This inconvenience is magnified because Jneid

and Soujanen are simultaneously parties in the related Strong Litigation which is also pending in

California.[11]  (Burke Decl., ¶ 10 and Ex. E).  It is a considerable burden to become involved in an

unnecessary third action in New York.

        As to the *third* factor, the interest in avoiding piecemeal litigation substantially

supports dismissal of this case.  *See Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*,

762 F.2d 205, 211 (2d Cir. 1985).  In particular, "[m]aintaining virtually identical suits in two

forums ... would waste judicial resources and invite duplicative effort."  *Id.* at 211; *see also*

---

[10]    Sheldon, who was involved in the negotiation of these contracts and was to be the signatory on them, has recently been indicted for an illegal kickback scheme involving contracts such as the ones in this case.  (Burke Decl., Ex. B).

[11]    Indeed, the California Law Funder Action and the Strong Litigation are related, and may be consolidated.  (Burke Decl., ¶ 2).  The court in the Strong Litigation is scheduled to decide on October 31, 2012 whether to order the Tripole Payment Funds interpled and to allow Strong to expand the scope of her claims in the Strong Litigation to include those funds.  (Burke Decl., ¶ 11).  If that occurs, Petitioners will be joined to that action as necessary parties.  In either event, Petitioners will also become parties to the Strong Litigation.

*Telesco v. Telesco Fuel and Mason's Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985);

*Radioactive, J.V.*, 153 F. Supp. 2d at 474.  Here, although the actions are not identical, the

federal action is a mere subset of the California Law Funder Action.  Petitioners have asked both

courts to determine the arbitrability of Jneid's claims, in this court through the Petition, and in

the California court through a motion to dismiss or stay.  (Burke Decl., Ex. H).  There is no

dispute that the California court likewise has the authority to compel arbitration.  *See* Cal. Civ.

Proc. Code § 1281.2 (West 2012).  Petitioners' sole claim to compel arbitration can be resolved

in the California case.

However, not all of Jneid's claims can be vindicated here, because Soujanen, a

defendant in the California Law Funder Action, has not been joined in this case.  "The risk of

piecemeal adjudication is especially great where a party in one lawsuit is absent from the other."

*First Keystone Consultants*, 862 F. Supp. 2d at 189.  Jneid seeks to resolve whether and to what

extent Soujanen's receipt of the Sanctions Funds money must be used to satisfy the promissory

notes.  The risk of inconsistent outcomes should Jneid be compelled to arbitration with

Petitioners here - in which no party will represent Soujanen's interests - while simultaneously

proceeding in the California action against Soujanen, is significant.

Additionally, parties to the Strong Litigation have asserted claims to the Tripole

Funds.[12]  (Burke Decl., ¶ 11 and Ex. I).  Jneid is seeking declaratory relief as to the ownership of

those funds as against Petitioners.  If this court compels arbitration, it will likely produce

additional litigation over the enforcement of any arbitration award and the potentially preclusive

effect of the California courts' decisions with regard to the conflicting claims to ownership of

---

[12]     The California court in the Strong Litigation is set to decide whether those claims will
proceed on October 31, 2012.  (Burke Decl., ¶ 11).  At the same time the court may also decide
the pending motion to enjoin the distribution of those funds to any person or to order that they be
deposited with the court.  (Burke Decl., ¶ 11).

those funds.  *See Arkwright-Boston*, 762 F.2d at 211 (noting the risk of "breed[ing] of additional litigation" over preclusion issues).  Because all of Petitioners' claims can be resolved in the California Law Funder Action, and because of the risk of inconsistent outcomes as between this action and the California actions, this factor weighs strongly in favor of dismissal.

        As to the *fourth* factor, abstention is indicated because the California Law Funder Action was filed first.  The California Law Funder Action was filed on May 29, 2012. (Burke Decl., ¶ 12).  This action was filed on September 17, 2012.  (Petition, p. 9).  The related Strong Litigation has been pending for over two years.[13]  (Burke Decl., ¶ 8 and Ex. E).  Furthermore, the California Law Funder Action has progressed further than this action.  Discovery is open, and Jneid is preparing discovery to serve on Petitioners.  (Burke Decl., ¶ 12).  Discovery is not yet open in this action.  Discovery will be necessary to establish the legality and enforceability of the CPAs, and neither court will be able to rule on the arbitrability of Jneid's claims until such discovery has been completed.  To whatever extent this action may have progressed further on the issue of arbitrability because of the emergency hearing in New York state court, that progress can be attributed entirely to Petitioners' decision to seek expedited hearing in New York two days before their response to the California Law Funder Action was due and before the New York Court even had jurisdiction over Jneid.  *See First Keystone Consultants*, 862 F. Supp. 2d at 192 ("[T]he law discourages . . . a race to adjudication, particularly where [the parties] have contributed to the delay about which they complain."); *Arkwright-Boston*, 762 F.2d at 211 ("[C]oncurrent proceedings creates the serious potential for spawning an unseemly race to see which forum can resolve the same issues first [which would be] prejudicial ... to the possibility of reasoned decision making by either forum." (alteration in original) (quotation marks omitted)).

---

[13]     In that time, the case has been heavily litigated and extensive discovery has occurred between all parties.  (Burke Decl., Ex. E).  Trial is currently set for May 6, 2013. (Spencer Decl., ¶ 11 and Ex. E).

Because the California Law Funder Action has progressed further and was first filed, this factor favors abstention.  Moreover, by filing this action instead of simply responding to the duly served California Law Funder Action with the very Motion to Dismiss that they ultimately filed, Petitioners are clearly improperly attempting to put the New York courts in a race to see which forum can resolve the same issues first.

As to the *fifth* factor, state law provides the rule of decision in this case.  "When state law will apply to the bulk of the claims this factor will weigh in favor of a federal court abstaining."  *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 840 F. Supp. 211, 217 (E.D.N.Y. 1994). The CPAs include a New York choice of law provision, and thus New York law may govern those agreements.  The California Law Funder Action includes underlying state law claims as well as a federal RICO claim.  However, the merits of the federal claim are not before this court.  Although a California court will be applying New York law, abstention is still appropriate.  *See Radioactive, J.V.*, 153 F. Supp. 2d at 476 ("Simply because this court sits in New York does not mean that it can apply New York state law any better than the California court.  Federal courts are obliged to give comity to state courts and not to assume expertise where none may lie." (quotation marks omitted)).

As to the *sixth* factor, Petitioners' rights will be adequately protected in the California court.  They have already asked the California court to decide on the arbitrability of Jneid's claims, and the court has the authority to compel arbitration if asked.  Thus, this factor weighs in favor of abstention.  *See Wiggin & Co. v. Ampton Invs., Inc.*, 66 F. Supp. 2d 549, 553 (S.D.N.Y.1999) ("Wiggin's rights are adequately protected in the California Action, where it can assert (as counterclaims) the same claims raised here.").

*Finally*, because Petitioners filed this action vexatiously, the court should dismiss

the action.  *See AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d at 278.

Petitioners had the option of seeking to compel arbitration in the California Law Funder Action.

Instead, they sought emergency relief in New York state court in an effort to haul Jneid into a

distant forum that lacks jurisdiction over him in an attempt to avoid the clear jurisdiction of the

California court.  They have now needlessly asked both courts to consider the arbitrability of

Jneid's claims.  Because the petition was reactive and vexatious, this factor weighs in favor of

abstention.  *See Morgan Stanley Dean Witter Reynolds, Inc. v. Gekas*, 309 F. Supp. 2d 652, 658

(M.D. Penn. 2004) (abstaining from petition to compel arbitration where petition was filed after

state court was considering the same issue).

       Because all of the above factors weigh in favor of abstention, this court should

dismiss the petition to compel arbitration.  *Id*. at 661 and n.14 (dismissing petition because state

court ruling on arbitrability would have future preclusive effect).  In the alternative, this court

should stay this action until the California court has had the opportunity to rule on the

arbitrability of Jneid's claims.

## <u>CONCLUSION</u>

For all of the foregoing reasons, this action should be dismissed pursuant to Fed.

R. Civ. P. 12(b)(2), (6) and (7), or, in the alternative, the action should be dismissed or stayed on

abstention and comity grounds.

DATED:  October 29, 2012                    Respectfully Submitted,

THE SALL LAW FIRM
A Professional Corporation


                                              /s/ Suzanne Burke
By:_____
                    SUZANNE BURKE

32351 Coast Highway
Laguna Beach, California 92651
Telephone: (949) 499-2942
Facsimile: (949) 499-7403
Email: sburke@sall-lawoffice.com

*Attorneys for Respondent AMER JNEID*

27

## PROOF OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 32351 Coast Highway, Laguna Beach, California 92651.

On October 29, 2012, I served the foregoing document, **MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS PETITION OR, IN THE ALTERNATIVE, STAY ACTION**, on all interested parties in said action by placing a true copy thereof in a sealed envelope addressed as set forth below:

Sean R. Callagy, Esq.                                   *Attorneys for Petitioners*
Michael J. Smikun, Esq.
SEAN R. CALLAGY, ESQ., LLC
650 From Road, Suite 565
Paramus, NJ 07652

[X]   **BY MAIL**, as follows:

> By mail, I deposited such envelope(s) in the mail at Laguna Beach, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Laguna Beach, California, in the ordinary course of business. (FRCP 5(b)(2)(C)).

[X]   **FEDERAL** – I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.

Executed on October 29, 2012, at Laguna Beach, California.

/s/ Suzanne Burke
_____
Suzanne Burke

28